Cruz Management Co. *v.* Thomas.

CRUZ MANAGEMENT CO., INC., & another[1] *vs.* BERNICE
THOMAS.

Suffolk. February 7, 1994. - May 12, 1994.

Present: WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Summary Process*, Appeal. *Housing. Practice, Civil*, Notice of appeal, In-
tervention, Judicial discretion, Attorney's fees. *Landlord and Tenant*,
Habitability, Rent, Quiet enjoyment. *Damages*, Breach of implied war-
ranty of habitability, Breach of covenant of quiet enjoyment, Attorney's
fees, Consumer protection case, Repairs. *Consumer Protection Act*,
Landlord and tenant, Damages.

[1]The intervener, Massachusetts Housing Finance Agency. We
acknowledge the brief of the Massachusetts Law Reform Institute filed on
behalf of the amici curiae, Massachusetts Tenant Organization and
Massachusetts Union of Public Housing Tenants.

failed adequately to correct, made it foreseeable that the value of the leased premises would be impaired so as to warrant imposition of civil liability and an award of attorney's fees under G. L. c. 186, § 14, for interference with the tenant's quiet enjoyment of the premises. [788-790]

A judge of the Housing Court erred in failing to find a landlord in violation of G. L. c. 93A, §§ 2 (a) and 9, based on its substantial and material breach of the implied warranty of habitability of premises leased to a tenant; however, the tenant was not entitled to an additional recovery of actual damages beyond her recovery for breach of the implied warranty, nor was she entitled to multiple damages where the judge found the landlord's conduct to be merely negligent and not knowing or wilful. [790-791]

SUMMARY PROCESS. Complaint filed in the Boston Division of the Housing Court Department on October 9, 1990.

The case was heard by *Manuel Kyriakakis*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Sonal Hope Mithani* (*Paul R. Collier, III, & Lee D. Goldstein* with her) for the defendant.

*Janet Steckel Lundberg* (*Richard M. Bluestein* with her) for the intervener.

*Henry Korman & Charles Harak*, for Massachusetts Tenants Organization & another, amici curiae, submitted a brief.

GREANEY, J. The plaintiff, Cruz Management Co., Inc., commenced a summary process action for possession under G. L. c. 239 (1992 ed.) in the Housing Court for the city of Boston against its tenant, the defendant Bernice Thomas. Thomas filed an answer and counterclaims alleging breach of the implied warranty of habitability; breach of the covenant of quiet enjoyment, see G. L. c. 186, § 14 (1992 ed.); and a violation of G. L. c. 93A (1992 ed.).[2] After a trial, the judge

---

[2]Thomas also brought counterclaims for intentional infliction of emotional distress, and a violation of G. L. c. 186, § 15B (1992 ed.), the security deposit law. The judge found for Cruz Management on these claims, and no issue is raised as to them on appeal.

entered a written decision concluding that a breach of the
implied warranty of habitability had been proved, and, on
this ground, awarding monetary damages and possession of
the premises to Thomas. Judgment entered for Cruz Man-
agement on the claims under G. L. c. 186, § 14, and G. L. c.
93A. Thomas appealed from the judgment as to the amount
of damages awarded and the denial of recovery under G. L.
c. 186, § 14, and G. L. c. 93A. We granted an application
for direct appellate review of this case and a companion case,
*Cruz Management Co.* v. *Wideman, ante* 771 (1994). We
vacate the judgment and remand this matter for further
proceedings.

1. *Procedural history and issues.* After judgment entered
on January 3, 1991, Thomas filed a motion which we con-
sider to be under Mass. R. Civ. P. 59(e), 365 Mass. 828
(1974), and a notice of appeal, as well as a separate request
for attorney's fees. After a hearing, the motion and the re-
quest for attorney's fees were denied on February 14, 1991.
On March 22, 1991, the Massachusetts Housing Finance
Agency (MHFA) filed a motion to intervene on the side of
the plaintiff, Cruz Management. After another hearing, the
motion was granted, and MHFA was permitted to supple-
ment the record. Thomas filed a notice of appeal from the
judge's order permitting intervention.

a. *Motion to dismiss.* MHFA has filed a motion to dismiss
Thomas's appeal for lack of jurisdiction on the ground that
Thomas's notice of appeal was filed prematurely, and was,
therefore, ineffective. See *Manzaro* v. *McCann,* 401 Mass.
880, 881-882 & n.2 (1988) (Mass. R. A. P. 4 [a], as
amended, 393 Mass. 1239 [1985], provides that time for ap-
peal runs from date of entry of order ruling on a motion
under rule 59(e); notice of appeal filed prematurely has no
effect; this rule applies in a summary process action). MHFA
did not raise this issue in its brief, and waited until more
than one year after final judgment entered before filing this
motion. Because the postjudgment motion for intervention
filed by MHFA, from which Thomas filed a notice of appeal,
engendered some confusion about when final judgment en-

tered, and because Thomas's request for direct appellate review by this court was, in fact, endorsed by MHFA, we decline to treat Thomas's notice of appeal as a nullity. See *Urban Inv. & Dev. Co.* v. *Turner Constr. Co.*, 35 Mass. App. Ct. 100, 101 n.3 (1993). See also *Brown* v. *Quinn*, 406 Mass. 641, 646 (1990) (where party has filed postjudgment motions and taken actions as though appeal was proper, it is estopped from arguing subsequently that notice of appeal was premature).

b. *MHFA's motion to intervene.* On appeal, Thomas renews her objection to intervention by MHFA. Massachusetts Rule of Civil Procedure 24 (b), 365 Mass 769 (1974), governing permissive intervention, provides, in pertinent part, that "[u]pon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common."[3] A judge has broad discretion in deciding whether to permit intervention. See *Massachusetts Fed'n of Teachers* v. *School Comm. of Chelsea*, 409 Mass. 203, 209 (1991); *Corcoran* v. *Wigglesworth Mach. Co.*, 389 Mass. 1002, 1003 (1983).

As the Appeals Court has observed, "[a]lthough motions to intervene *after* judgment are seldom 'timely,' see [7C] Wright & Miller, Federal Practice & Procedure § 1916, at [444-445 (1986)], they may be allowed if the proposed intervener demonstrates a strong justification for intervention after judgment" (emphasis in original). *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 132 (1986). The party seeking intervention at this point must establish a compelling interest in the litigation and must justify its failure to intervene at an earlier stage of the action. See *id.* at 132-133. Cf. *Coggins* v. *New England Patriots Football Club, Inc.*, 397 Mass. 525,

---

[3]In its motion to intervene, MHFA relied on Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974), governing intervention as of right, as well as the provision governing permissive intervention. The judge allowed the motion to intervene without further explanation. Because we conclude that it was within the judge's discretion to permit intervention, we need not consider whether MHFA was entitled to intervene as of right.

538-539 (1986) (refusing to permit intervention by parties who had rejected earlier invitation to join litigation); *Corcoran* v. *Wigglesworth Mach. Co., supra.*

MHFA moved to intervene here, and in *Cruz Management Co.* v. *Wideman, supra.* In these cases, two judges of the Boston Housing Court issued decisions in conflict on the significant question of how damages should be calculated in an action for a breach of the implied warranty of habitability brought by a tenant who is the beneficiary of rent subsidies, paid with Federal funds by MHFA, on the tenant's behalf. Resolution of this conflict is likely to affect a large number of cases. As administrator of the section 8 Housing Assistance Payments Program, see 42 U.S.C. § 1437f (1988 & Supp. 1990), MHFA (and not Cruz Management) is the proper party to raise concerns about the impact of this litigation on the section 8 program in general. It has, therefore, a compelling interest in this action.

As to timing, MHFA moved to intervene here, and in *Wideman, supra,* as soon as was practicable after it became aware of these actions and of its interest in them. To the extent there are deficiencies in the record caused by the tardiness of MHFA's intervention, those deficiencies have not prejudiced the tenants, nor has MHFA's intervention caused more than a moderate delay in the proceedings. See *Massachusetts Fed'n of Teachers* v. *School Comm. of Chelsea, supra* at 209. Allowance of MHFA's motion to intervene was well within the judge's discretion. Having concluded that the case and the parties are properly before us, we turn to the substantive issues raised in this appeal, first summarizing the facts relevant to those issues.

2. *Facts.* Thomas[4] has occupied the second floor apartment in the building at 113 Devon Street, in the Dorchester section of Boston, since May, 1986. Cruz Management assumed responsibility for the housing project in May, 1988. From May, 1988, through October, 1990 (when Cruz Management

---

[4]Living with Thomas at the time of trial were her four children, ages nineteen, sixteen, thirteen and eight, and her grandchild, age two.

filed its eviction complaint), conditions in the apartment violated numerous provisions of the State Sanitary Code. The apartment lacked adequate heat and hot water, and was infested with cockroaches, mice and rats. Common areas were unsanitary and the stove was defective. There were also violations of the fire and building codes, including a defective smoke detector, windows and wiring, and no fire escape.

Although repeated attempts at repair were made, most of the code violations described above were present during the entire time that Cruz Management was responsible for the condition of Thomas's apartment. The judge assessed damages only for the months of April, 1989, through October, 1990, because Thomas signed an agreement in April, 1989, waiving all claims arising from conditions in the premises prior to that date. The judge found that conditions during the relevant period "were such so as to make the premises of no value to [Thomas]."

The monthly contract rent for the apartment was $1,082. Thomas personally paid $168 per month from April, 1989, through July, 1990, and $218 per month thereafter. The remainder of the rent was paid to Cruz Management by MHFA with rent subsidy funds. The judge awarded damages of $3,342 for breach of the implied warranty of habitability.

3. *Damages for breach of the implied warranty of habitability.* As was noted previously, a part of Thomas's rent was paid with rent subsidy funds, provided by the United States Department of Housing and Urban Development, under a program of aid for the rehabilitation of existing housing. See 42 U.S.C. § 1437f. The judge calculated damages for breach of the implied warranty of habitability based on the portion of the rent paid personally by Thomas. In all relevant respects, the facts of this case match those in *Cruz Management Co.* v. *Wideman.* Thomas was entitled to damages calculated on the basis of value of the premises as warranted.

*Wideman, supra* at 775-777.[5] As the parties have not argued otherwise, we assume that the contract rent, which by Federal law must approximate the fair market value of the leased premises, see 24 C.F.R. §§ 881.203 and 881.204 (1993), is equal to the value of the premises as warranted. On remand, therefore, the contract rent should be used as the basis for calculating a new award of damages.[6]

4. *Liability under G. L. c. 186, § 14.* Thomas claimed that conditions in her apartment violated the covenant of quiet enjoyment. See G. L. c. 186, § 14.[7] Relying on *Simon* v. *Solomon,* 385 Mass. 91 (1982), the judge declined to find a violation of § 14 on the ground that it must be proved that a landlord was reckless in disregarding his tenant's rights before liability may be imposed under that statute. Since the evidence indicated that the ineffectual attempts were made to respond to the tenant's complaints, only negligent conduct was shown. In the judge's opinion, this was not sufficient to establish liability under § 14. While Thomas acknowledges that she is not entitled to an additional award of actual damages under the statute, see *Simon* v. *Solomon, supra* at 108-110, she maintains that the conduct of Cruz Management

---

[5]Thomas has moved to strike portions of the brief filed by MHFA concerning the issue of the calculation of damages for breach of the implied warranty of habitability for a tenant in subsidized housing. That issue was decided on the basis of the briefs and appendix submitted in *Cruz Management Co.* v. *Wideman, supra.* We have not relied on those portions of MHFA's brief to which Thomas objects. Thus, there is no need to consider this motion.

[6]During the months from August, 1989, through October, 1990, Thomas withheld payment of some of her rent due to the condition of the premises, accumulating an arrearage which Cruz alleged totalled $1,781. It appears that the judge failed to deduct any arrearage from the damage award. See *Wolfberg* v. *Hunter,* 385 Mass. 390, 398-400 (1982). On remand, any arrearage should be calculated and deducted from damages awarded to Thomas.

[7]General Laws c. 186, § 14 (1992 ed.), provides, in pertinent part, that "any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant . . . shall . . . be liable for actual and consequential damages or three month's rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee."

violated its provisions, and that she was entitled, on this basis, to an award of attorney's fees. We agree with Thomas.

The question resolved in the *Solomon* case was whether § 14, the violation of which may be the basis of criminal as well as civil liability, applies only to intentional conduct by a landlord. We concluded in the *Solomon* case, with respect to civil liability, that "malicious intent is not necessary, and that the statute covers, *at the least,* reckless conduct" (emphasis added). *Id.* at 101. We also observed that "[t]he Legislature may have contemplated a balance between tenant protection and the legitimate interests of landlords, and therefore may have intended that some degree of fault or foreseeability should be a prerequisite to liability under § 14." *Id.* These statements are not incompatible with the imposition of liability based on negligence. Negligent conduct is, of course, conduct involving "some degree of fault." See 3 F. Harper, F. James & O. Gray, The Law of Torts 103-126 (2d ed. 1986).

Decisions from this court and from the Appeals Court clearly support the imposition of civil liability under § 14 in circumstances like those present in this case. In *Ianello* v. *Court Management Corp.*, 400 Mass. 321, 323 (1987), it was said that a landlord violates § 14 when his acts or omissions impair the value of the leased premises. See also *Blackett* v. *Olanoff*, 371 Mass. 714, 718 (1977) (addressing breach of covenant of quiet enjoyment at common law; declining to perpetuate distinction, for purposes of imposing liability, between malfeasance and nonfeasance). A landlord's failure to repair defects of which he has notice in leased premises is an omission which frequently has been deemed to violate § 14. See *Simon* v. *Solomon, supra* at 103 (failure to control floods in tenant's apartment); *Darmetko* v. *Boston Hous. Auth.*, 378 Mass. 758, 761 (1979) (failure to repair leaky roof); *Dorgan* v. *Loukas*, 19 Mass. App. Ct. 959, 960 (1985) (failure to bring apartment into habitable condition and to keep it so). A "landlord's conduct, and not his intentions, is controlling," *Blackett* v. *Olanoff, supra* at 716, on the ques-

tion whether there has been a breach of the covenant of quiet enjoyment.

Cruz Management had notice of numerous sanitary, building and fire code violations in the apartment leased by Thomas. It was wholly foreseeable (in fact, it was inevitable) that the failure adequately to correct these violations, which included inadequate heat and hot water and a serious infestation of vermin, would impair substantially the value of the leased premises as a dwelling place for Thomas and her family. On the facts found by the judge a violation of § 14 has been shown. On remand, Thomas is entitled to reasonable attorney's fees on this basis. See *Fontaine* v. *Ebtec*, 415 Mass. 309, 324-326 (1993). See also *Darmetko* v. *Boston Hous. Auth.*, *supra* at 763-765.

5. *Multiple damages under G. L. c. 93A.* We agree with Thomas that the judge erred in failing to find a violation of G. L. c. 93A, §§ 2 (*a*) and 9, based on the substantial and material breach of the implied warranty of habitability caused by the condition of the premises leased to her. See *Dorgan* v. *Loukas*, 19 Mass. App. Ct. 959, 959-960 (1985); Gilleran, The Law of Chapter 93A § 9:6, at 263-264 (1989). See also *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 193 (1990) (negligent breach of implied warranty of merchantability which is substantial violates c. 93A). Thomas is not entitled to an additional recovery of actual damages on this basis. See *Simon* v. *Solomon*, 385 Mass. 91, 109-111 (1982).[8]

Under G. L. c. 93A, § 9 (3) (1992 ed.), a plaintiff prevailing on a c. 93A claim may be awarded "up to three but not less than two times [the actual damages] if the court finds that the use or employment of the act or practice was a willful or knowing violation . . . or that the refusal to grant relief upon demand was made in bad faith." Here, the judge found that Cruz Management made repeated attempts to repair the defects in the apartment, and that a number of defects were

---

[8]On remand, attorney's fees may be awarded either under c. 93A or under G. L. c. 186, § 14, in the judge's choice.

repaired, only to reoccur. It was open to the judge to conclude that conditions in the leased premises were attributable to negligent attempts at repair, and not to a knowing or wilful disregard of the conditions in the apartment. Cruz Management's attempts at repair also support the conclusion that there was no bad faith refusal to respond to the tenant's complaints. Compare *Brown* v. *LeClair*, 20 Mass. App. Ct. 976, 980 (1985) (no investigation or other response after receipt of c. 93A demand letter). The judge was not required to award double or treble damages.[9]

6. *Disposition.* The judgment is vacated. The case is remanded to the Boston Housing Court for entry of a new judgment which (a) awards damages based on the contract rent, from which any arrearage should be deducted; (b) awards Thomas costs and attorney's fees in connection with work performed on her behalf in the trial court. Thomas has requested, and is entitled to, costs and attorney's fees in connection with this appeal. See *Haddad* v. *Gonzalez*, 410 Mass. 855, 893 (1991). The matter of that award is to proceed in accordance with the directions stated in *Yorke Management* v. *Castro*, 406 Mass. 17, 20 (1989).

*So ordered.*

[9]*Berman & Sons* v. *Jefferson*, 379 Mass. 196 (1979), and *Montanez* v. *Bagg*, 24 Mass. App. Ct. 954 (1987), on which Thomas relies, are clearly distinguishable. The statement in *Berman* that a landlord's efforts at repair have no bearing on the calculation of a rent abatement applies only to a claim for a breach of the warranty of implied habitability, for which liability is imposed without regard to fault. In *Montanez* v. *Bagg, supra,* the landlord knowingly rented to the tenants an apartment which had been condemned by local authorities as unfit for human habitation.