Husam H. Al-Ziab & another[1] vs. George A. Mourgis & another.[2]

Middlesex. February 3, 1997. - May 8, 1997.

Present: Wilkins, C.J., Lynch, O'Connor, Fried, & Marshall, JJ.

*Lead Poisoning. Landlord and Tenant,* Quiet enjoyment. *Practice, Civil,* Attorney's fees. *Negligence,* One owning or controlling real estate.

A landlord's violation of the lead paint statute, G. L. c. 111, §§ 190 et seq., does not, without a showing of at least negligent conduct by the landlord, constitute a violation of the statutory covenant of quiet enjoyment, G. L. c. 186, § 14, for purposes of an award of attorney's fees. [849-852]

Civil action commenced in the Superior Court Department on October 23, 1989.

The case was tried before *Judith A. Cowin, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kevin Hensley* for the defendants.

*Edmund P. Daley* for the plaintiffs.

*Robert C. Tommasino, Gerald T. Anglin, Cameron F. Kerry, Donna M. Evans, Seni M. Adio & William C. Miles,* for the Massachusetts Property Insurance Underwriters Association, amicus curiae, submitted a brief.

MARSHALL, J. In this case, we consider whether a violation of the lead paint statute, G. L. c. 111, §§ 190 et seq., without more, constitutes a violation of the statutory covenant of quiet enjoyment, G. L. c. 186, § 14. We conclude that it does not; proof of knowledge of the risk and of negligence on the part of a landlord at the least is a prerequisite to recovery under G. L. c. 186, § 14.

[1] Dina H. Al-Ziab. The plaintiffs are minors, and this action has been brought on their behalf by their parents, Hussein Al-Ziab and Eugenia Al-Ziab.

[2] Maria Mourgis.

I

Hussein Al-Ziab and Eugenia Al-Ziab (parents) brought suit on behalf of their twin children, Husam and Dina (plaintiffs) against George A. Mourgis and Maria Mourgis (landlords), alleging that the plaintiffs became ill as the result of poisoning from lead paint in their apartment. The first count of the complaint alleged a violation of the lead paint statute; the second count alleged a violation of the statutory covenant of quiet enjoyment.

The case was tried before a jury. There was evidence that the landlords purchased a three-family house in 1975. In 1986, the parents leased one of the apartments in the landlords' building. The plaintiffs were born in May, 1988. In August, 1989, it was discovered that the two children suffered from lead poisoning, and a subsequent inspection by the department of health and hospitals of Cambridge revealed that there was a dangerous level of lead in the apartment. After notifying the landlords, the Al-Ziab family moved out of the apartment temporarily, while the landlords arranged for removal of the lead paint by a professional. They moved back into the apartment after the deleading had been satisfactorily completed.

Prior to trial the plaintiffs filed a motion in limine to exclude all evidence that the landlords were not aware of the presence of lead paint in the apartment. They argued that the landlords' actual knowledge of the presence of lead paint was irrelevant because the lead paint statute imposes strict liability on landlords and, the plaintiffs claimed, any violation of that statute would necessarily constitute a violation of the quiet enjoyment statute. The trial judge agreed, and granted the motion in limine.

Consistent with the judge's ruling on that motion, the landlords were precluded from introducing any evidence of their lack of knowledge of lead paint in the apartment.[3] The jury were instructed on the elements of a claim under the

[3]Some of the evidence nevertheless suggested that the landlords were in fact not aware of the presence of lead in the apartment. For example, the landlords lived on the premises themselves for approximately ten years, and raised their own children there; no children of any other tenants in the premises had suffered lead poisoning; and the landlords had received no complaints from the parents regarding peeling paint or any other condition that might suggest the presence of lead paint in the apartment.

lead paint statute (count one) but, over the landlords' objection, were not charged separately as to the quiet enjoyment statute (count two).[4] In response to special questions, the jury found that lead paint on the premises was the proximate cause of the plaintiffs' injuries, and awarded $25,000 in compensatory damages to Dina and $10,000 in compensatory damages to Husam.

The plaintiffs then moved for attorney's fees pursuant to G. L. c. 186, § 14, repeating their claim that the violation of the lead paint statute constituted a violation of G. L. c. 186, § 14. The judge allowed the request and awarded attorney's fees in the amount $63,705. Judgment was entered accordingly.[5] On appeal, the landlords do not dispute that the apartment contained lead paint, or that the plaintiffs' lead poisoning was proximately caused by the lead in the apartment; and they do not contest the amount of the attorney's fees awarded to the plaintiffs. The only question is whether on this record the plaintiffs were entitled to recover attorney's fees under G. L. c. 186, § 14. We transferred the case to this court on our own motion.

II

The landlords argue that it was error for the trial judge to rule, as she did, that a violation of the lead paint statute, is necessarily a violation of G. L. c. 186, § 14. The judge's decision in effect, they say, impermissibly holds them strictly liable for the payment of the plaintiffs' attorney's fees, an award that is not available under the lead paint statute itself. While we have interpreted the provisions of the quiet enjoyment statute on several occasions, see, e.g., *Cruz Mgt. Co.* v. *Thomas*, 417 Mass. 782, 788-790 (1994), and cases cited, we have not previously considered whether strict liability imposed under the lead paint statute (or any other statute

---

[4]This was consistent with the plaintiffs' position that the only breach of the quiet enjoyment statute that they were claiming was the breach of the lead paint statute.

[5]Because the calculation of damages would have been the same under both counts of the complaint, the plaintiffs did not seek a duplicative award of damages under G. L. c. 186, § 14. A final judgment for compensatory damages in the amount of $35,000, with interest, was entered on March 15, 1995. After the judgment was amended to make a correction in the calculation of interest, the landlords satisfied the judgment in full.

regulating the conduct of landlords) without more constitutes a violation of G. L. c. 186, § 14.

General Laws c. 186, § 14, originally enacted in 1927, codified a tenant's common law rights under the implied covenant of quiet enjoyment. St. 1927, c. 339, § 1. See *Simon* v. *Solomon,* 385 Mass. 91, 101-102 (1982). At common law, and as originally enacted by statute, the covenant of quiet enjoyment prohibited a landlord from wilful or intentional interference with a tenant's quiet enjoyment of the leased premises. In 1973, the statute was rewritten and the requirement of intentional conduct was eliminated; landlords could now be held liable for "directly or indirectly" interfering with a tenant's quiet enjoyment of the premises. St. 1973, c. 778, § 2.

In *Simon* v. *Solomon, supra* at 101, we interpreted the new statute and concluded with respect to civil liability it was not necessary for a tenant to show malicious intent to recover against a landlord; we said that the statute covered "at the least" the reckless conduct that had been shown in that case. *Id.*[6] Twelve years later, in *Cruz Mgt. Co.* v. *Thomas, supra,* we rejected a claim that a violation of G. L. c. 186, § 14, could be imposed only if it were proved that a landlord was reckless in disregarding his tenant's rights, and we concluded that negligent conduct, conduct involving "some degree of fault," by a landlord could support the imposition of liability under § 14. *Id.* at 789. We noted that a landlord's failure "to repair defects of which he has notice in leased premises is an omission which frequently has been deemed to violate § 14." See *Cruz, supra* at 789, citing *Simon* v. *Solomon, supra* at 103 (failure to control floods in tenant's apartment); *Darmetko* v. *Boston Hous. Auth.,* 378 Mass. 758, 761 (1979) (failure to repair leaky roof); *Dorgan* v. *Loukas,* 19 Mass. App. Ct. 959, 960 (1985) (failure to bring apartment into habitable condition and keep it so). Today we make clear what was implicit in those rulings: to support the imposition of liability under the quiet enjoyment statute, there must be a showing of at least negligent conduct by a landlord and violation of the lead

---

[6]We also observed that G. L. c. 186, § 14, permits landlords to provide in lease contracts that they are not liable for conditions resulting from natural causes beyond their control and that this provision "suggests that liability was not intended to be absolute." *Simon* v. *Solomon,* 385 Mass. 91, 101 n.6 (1982).

paint statute alone is not sufficient to prove such negligence. Stated differently, to obtain relief under § 14 for a claim of lead paint poisoning it must be demonstrated that the landlord had notice of or reason to know of the presence of lead and failed to take appropriate corrective measures.

Our conclusion is consistent with our established analytical approach to cases interpreting the quiet enjoyment statute. In *Simon, supra* at 101, and again in *Cruz, supra* at 789, we observed that the "Legislature may have contemplated a balance between tenant protection and the legitimate interests of landlords, and therefore may have intended that some degree of fault or foreseeability should be a prerequisite to liability under § 14." We have also said that § 14 imposes liability whenever the " 'natural and probable consequence' of a landlord's action was interruption of the tenant's rights." *Simon* v. *Solomon, supra* at 102, quoting *Westland Hous. Corp.* v. *Scott*, 312 Mass. 375, 381 (1942). In *Cruz*, we observed that the landlord had notice of the defects in the leased premises which it failed to repair, and that it was "wholly foreseeable" that the injury to the tenant would result from this failure to make the repairs. Indeed, in each case since the 1973 statutory revision in which we have recognized a breach of the covenant of quiet enjoyment, there was evidence that the landlord failed to act reasonably in the circumstances concerning a problem known to the landlord, and the natural and probable consequences of such failure caused the interference with the tenant's quiet enjoyment of the premises. See, e.g., *Cruz, supra* at 790; *Doe* v. *New Bedford Hous. Auth.*, 417 Mass. 273, 285-288 (1994)[7] ; *Darmetko* v. *Boston Hous. Auth.*, 378 Mass. 758, 761 (1979).

Our decision also interprets the quiet enjoyment statute in harmony with the comprehensive program of lead paint poisoning prevention and control. General Laws c. 111, §§ 190-199, inserted by St. 1971, c. 1081, § 1, and substantially amended in 1988 and 1994 (see St. 1987, c. 773, § 6-9; St. 1993, c. 482, §§ 3-18., imposes strict liability on landlords

---

[7]In *Doe* v. *New Bedford Hous. Auth.*, 417 Mass. 273, 287 (1994), we vacated the summary judgment entered for the landlord on a claim of violation of G. L. c. 186, § 14, because "the record suggests that the [landlord] stood idle, *despite continued requests and complaints* by the tenants . . . and stood idle when there were certain [corrective] measures that it could have taken relatively easily" (emphasis added).

for damages caused by poisoning from lead paint, and provides for treble damages if a landlord has been notified of the presence of lead paint and fails to correct it as provided by the statute. G. L. c. 111, § 199. See *Bencosme* v. *Kokoras,* 400 Mass. 40, 43-44 (1987). Significantly, the statute makes no provision for the payment of attorney's fees; had the Legislature intended that attorney's fees be awarded to a tenant who proves a violation of the lead paint statute it could readily have done so. Were we to accept the plaintiffs' argument, all landlords held strictly liable under the lead paint statute would necessarily be required to pay the attorney's fees of the tenant. That result is inconsistent with the statutory scheme; the plaintiffs cannot obtain indirectly what the statute fails to provide directly.

Moreover, the lead paint statute was enacted many years after the enactment of the quiet enjoyment statute. We must presume that at that time the Legislature was aware of the quiet enjoyment statute and its express provision for the award of attorney's fees. See St. 1927, c. 339, § 1; St. 1971, c. 1081, § 1; *Hadley* v. *Amherst,* 372 Mass. 46, 51 (1977). Yet the lead paint statute makes no reference to G. L. c. 186, § 14, and its statutory remedy for the attorney's fees, although it does contain references to other statutory landlord-tenant remedies. See, e.g., § 198, making available remedies for enforcement of the State sanitary code, and § 199A, making it a violation under both that section and c. 186, § 18, to evict a family with a child under the age of six to avoid deleading. Where the Legislature has declined to provide that a violation of the lead poisoning statute is also a violation of the quiet enjoyment statute, we are not inclined to do so.

The award of attorney's fees under G. L. c. 186, §. 14, is vacated. At trial the plaintiffs expressly elected not to have their claim under G. L. c. 186, § 14, submitted to the jury. Accordingly, the case is remanded to the Superior Court for entry of a new judgment on count two of the complaint in favor of the landlords.

*So ordered.*