APPEALS COURT 
 
 PHYLLIS NDORO vs. MARITZA TORRES

 
 Docket:
 23-P-165
 
 
 Dates:
 December 14, 2023 - December 11, 2024
 
 
 Present:
 Vuono, Rubin, & Smyth, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Consumer Protection Act, Landlord and tenant, Damages, Attorney's fees. Landlord and Tenant, Habitability, State sanitary code, Multiple damages, Attorney's fees. State Sanitary Code. Practice, Civil, Consumer protection case, Attorney's fees, Reconsideration.
 
 

  
      Summary process.  Complaint filed in the Northeast Division of the Housing Court Department on September 10, 2021.
      The case was heard by Gustavo A. del Puerto, J., and a motion for reconsideration was considered by him.
      John S. Wessler for the defendant.
      Thomas D. Kennedy for the plaintiff.
      SMYTH, J.  The landlord, Phyllis Ndoro, brought this no-cause summary process action to recover possession of an apartment from the tenant, Maritza Torres.  In her answer, Torres raised a number of defenses and counterclaims, including breach of the warranty of habitability, violations of G. L. c. 93A, breach of quiet enjoyment, and retaliation.[1]  After a bench trial, a judge of the Housing Court found that the "rotting bathroom underflooring," a condition that existed for nine months of the tenancy, endangered Torres's and her minor children's health and safety and amounted to a violation of the warranty of habitability.  The judge awarded Torres possession of the apartment pursuant to G. L. c. 239, § 8A, and $1,170 in damages on her habitability counterclaim, and he dismissed Torres's remaining counterclaims.[2]  Torres appeals from the judgment and from the judge's order denying her motion for reconsideration.[3]
      On appeal, Torres argues that the judge erred in concluding she failed to prove her G. L. c. 93A counterclaims because the judge's findings as to the landlord's breach of the warranty of habitability also necessarily supported a violation of c. 93A.  We agree, and reverse the dismissal of the c. 93A counterclaim, and remand for a determination of damages, attorney's fees, and costs.
      Background.  1.  The tenancy and condition problems.  We summarize the judge's findings of fact as supplemented by undisputed facts, reserving certain details for later discussion.  See Jones v. Jones, 103 Mass. App. Ct. 223, 224 (2023).  Ndoro is the owner and lessor of the apartment where Torres has resided with her four children since August 15, 2015.  The parties have a written lease, and the premises are subject to a rent subsidy.[4]
      Torres brought "substantial" issues, including "the rotting bathroom underflooring" that "affect[ed] the habitability of the [p]remises" to Ndoro's attention in July 2021.  Although the judge did not make detailed findings regarding the numerous written notifications Ndoro received regarding the apartment's condition, the undisputed evidence at trial demonstrated that the city of Lowell's division of development services (Lowell board of health) and Community Teamwork, Inc. (CTI) each separately inspected the premises twice between October 27, 2021, and March 29, 2022, and issued, collectively, four notices of numerous violations of the State sanitary code (code) to Ndoro.  See Chapter II of the State sanitary code, 105 Code Mass. Regs. §§ 410.000 (2007) (establishing minimum standards for fitness for human habitation).
      The Lowell board of health issued the first written notice of violation to Ndoro in a letter dated October 27, 2021.[5]  This notice instructed Ndoro to remedy the violations "forthwith" and to "[c]omply by" completing the necessary repairs by November 10, 2021.  The notice also included an instruction, in larger font at the bottom of the second page, stating "*All violations must be complied [with] immediately, unless otherwise indicated."  Pursuant to 940 Code Mass. Regs. § 3.17(1)(b) (1993) and G. L. c. 111, § 127L, Ndoro had "to substantially complete the necessary repairs" cited in the Lowell board of health's inspection within fourteen days of notice of the code violations.[6]  There is no dispute that Ndoro failed to make the necessary repairs by that date.
      On November 24, 2021, CTI, after conducting a general inspection of the premises, issued a failed inspection notice for substantially the same problems outlined in the Lowell board of health's notice of violations.[7]  This notice detailed the damage to the bathroom floor and indicated that the floor needed to be replaced.  The notice also identified other serious condition issues, such as loose and nonfunctional electrical outlets, broken interior and exterior doors, broken floor tiles, water leaks, broken windows, mildew, and nonfunctional smoke and carbon monoxide detectors.  Whereas the Lowell board of health notified Ndoro of the specific code violation for every issue, CTI's inspection letter simply noted that Ndoro failed inspection by providing descriptions of the substandard conditions and by including directions as to how she should remedy the violations.  In accordance with 940 Code Mass. Regs. § 3.17(1)(b) and G. L. c. 119, § 127L, Ndoro was required to substantially complete those repairs by December 11, 2021.  It is undisputed that she failed to do so.
      Both CTI and the Lowell board of health again sent notices to Ndoro concerning the aforementioned violations on January 24, 2022, and March 29, 2022, respectively.  The January 2022 inspection form notified Ndoro that the bathroom failed inspection due to electrical hazards, faucets dripping, a drain not properly operating, a ventilation issue, the condition of the walls, loose and missing laundry shelves, mildew, and the floor condition (specifically, "parts [were] damaged/missing"); the notice instructed Ndoro to, in addition to other repairs, "[i]nstall [a] new floor").[8]
      The Lowell board of health's March 29, 2022, notice of violation instructed Ndoro to replace the "cracked" bathroom floor within ten days; to replace the cracked kitchen floor tiles within seven days; and to "remove all mildew from [bathroom] walls and ceiling" within seven days.  The inspection notice also informed Ndoro that she would have to pay a $300 fine for each violation that was not repaired within those time periods.
      As a result of the failed inspection, CTI informed Torres on April 1, 2022 that it would begin withholding all rental subsidy payments until all required repairs were made and further, that unless Ndoro requested a reinspection by April 15, 2022, CTI would move forward with the termination of the 
housing assistance payment (HAP) contract.  CTI subsequently issued a notice indicating that the HAP contract would be terminated, effective June 1, 2022, due to the landlord's failure to bring Torres's apartment into compliance with the housing quality standards of the United States Department of Housing and Urban Development and the quality requirements of the Massachusetts Department of Housing and Community Development.  On May 27, 2022, CTI notified Torres that the apartment had passed inspection and that the subsidy was reinstated.
      2.  Judge's decision.  In his findings and rulings, the judge focused on the bathroom flooring to support his conclusion that there was a breach of the warranty of habitability.[9]  Specifically, the judge found that "[t]he condition of the bathroom floor was serious enough so as to endanger the health or safety of the [d]efendant [Torres] and the minor children residing at the [p]remises, so that that condition did diminish the fair rental value of the premises in a significant way."  The judge also found that Torres proved that this condition caused a violation of the warranty of habitability from July 2021 through March 2022.[10]  The judge awarded damages in the amount of $1,170.00, but denied Torres's request for attorney's fees.[11]
      With respect to Torres's G. L. c. 93A counterclaims, the judge found that Ndoro engaged in trade or commerce by renting more than one rental unit to various tenants, a finding not challenged on appeal, but concluded that Ndoro's actions in this case neither constituted unfair or deceptive acts or practices under c. 93A nor violated 940 Code Mass. Regs. § 3.17, because the landlord "corrected habitability problems within a reasonable time after receipt of notice pursuant to G. L. c. 111, § 127L."
      Discussion.  We accept the judge's findings of fact unless clearly erroneous, but we "scrutinize without deference the legal standard which the judge applied to the facts."  Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005), quoting Kendall v. Selvaggio, 413 Mass. 619, 621 (1992).  Torres contends that the judge's ruling that Ndoro did not violate c. 93A was erroneous as a matter of law.  We agree.
      1.  Chapter 93A violations.  A summary process defendant in the Housing Court "may assert . . . counterclaims, such as those based on violations of G. L. c. 93A . . . and may seek possession, monetary damages, or other equitable relief."  Federal Nat'l Mtge. Ass'n v. Rego, 474 Mass. 329, 339 (2016).  "[A] failure by a landlord to cure a code violation within a reasonable time after notice constitutes a violation of the landlord-tenant regulations that the Attorney General has promulgated pursuant to G. L. c. 93A, § 2 (c)."  South Boston Elderly Residences, Inc. v. Moynahan, 91 Mass. App. Ct. 455, 470 (2017).  Furthermore, "the Supreme Judicial Court has long recognized that a landlord can violate c. 93A based on a 'substantial and material breach of the implied warranty of habitability.'"  Id., quoting Cruz Mgt. Co. v. Thomas, 417 Mass. 782, 790 (1994).  A tenant who prevails under c. 93A, may be awarded "up to three but not less than two times [actual damages] if the court finds that the use or employment of the act or practice was a willful or knowing violation . . . or that the refusal to grant relief upon demand was made in bad faith."  G. L. c. 93A, § 9 (3).
      Torres argues that Ndoro willfully violated c. 93A by waiting at least nine months to repair the bathroom floor, a condition that the judge found serious enough to endanger the health and safety of Torres and her family.  Specifically, Torres contends that by not substantially completing the repairs within fourteen days of notice, the landlord violated the following regulations:  940 Code Mass. Regs. § 3.17(1)(b)(1) (failure to remedy a violation of the law that "may endanger or materially impair the health, safety, or well-being of the occupant"), and § 3.17(1)(b)(2) (1993) (failure to "maintain the dwelling unit in a condition fit for human habitation").  Torres also contends the unreasonable delay in repairing the floor violated § 3.17(1)(i) (1993) (failure "to comply with the State Sanitary Code or any other law applicable to the conditions of a dwelling unit within a reasonable time after notice of a violation of such code or law from the tenant or agency").  A landlord's violation of any of these regulations constitutes "an unfair or deceptive act or practice."  940 Code. Mass. Regs. § 3.17(1).
      The judge's conclusion that no c. 93A violation occurred because Ndoro "corrected habitability problems within a reasonable time after receipt of notice," is not supported by the evidence and contradicts his findings of fact.  See VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 617 & n.8 (1994) (where trial judge's ultimate conclusion that no c. 93A violation had occurred "clash[ed] discordantly" with judge's factual findings, appellate court may reach its own conclusion and set aside judge's ultimate ruling).  The undisputed evidence, which included the Lowell board of health's October 2021 and March 2022 inspection notices referencing the substandard bathroom floor, and CTI's November 2021 and January 2022 failed inspections ordering the installation of a new bathroom floor, shows unequivocally that Ndoro did not address the condition of the bathroom floor within fourteen days of receiving notice that the condition of the bathroom floor violated the code.  In fact, Ndoro did not endeavor to repair the floor's condition until approximately five months after the first notice from the Lowell board of health, and four months after the first notice from CTI.  We thus conclude that Ndoro's failure to take appropriate action to remedy the code violation attributable to the condition of the floor within fourteen days of notice as required under § 3.17(1)(b) and G. L. c. 111, § 127L, and within a reasonable time as required by § 3.17(1)(i), amounted to a violation of c. 93A.  See South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 470.
      Ndoro's approximately nine-month delay in replacing the rotting bathroom underflooring also constituted a sufficiently substantial and material breach of the implied warranty of habitability which, independent of the Attorney General's regulation, established a violation of c. 93A.  See South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 470, quoting Cruz Mgt. Co., 417 Mass. at 790 ("independent of the Attorney General's regulations, the Supreme Judicial Court has long recognized that a landlord can violate c. 93A based on a substantial and material breach of the implied warranty of habitability").  It is fundamental that a landlord has a duty to provide a tenant with premises free from conditions that would endanger or materially impair the health or safety of the tenant.  See Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 196-199 (1973).  Here, the judge found the condition of the bathroom floor from July 2021 through March 2022 was "serious enough so as to endanger the health or safety of the [d]efendant and [her] minor children."
      Ndoro's assertion that the delay in repairing the floor was due to the fact that she was unaware of the seriousness of the rotting bathroom underflooring until she reviewed the trial judge's findings is unavailing considering the undisputable evidence of notice of the floor's dilapidated condition from two separate housing agencies and Torres.[12]  Contrast Cruz Mgt. Co., 417 Mass. at 790-791 (no c. 93A violation where judge concluded conditions in leased premises were attributable to repeated negligent attempts at repair rather than knowing or willful disregard of conditions in apartment); South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 459, 470-471 (no c. 93A violation where tenant's delay in notifying landlord of habitability concerns was only cause of delay in addressing condition issues and, once notified, landlord contracted with plumber to perform repairs within one month).
      Ndoro also contends for the first time on appeal that the delay was due to "the fact that the repairs had to be made in the middle of a global pandemic, where labor and construction materials were in high demand and short supply," and that once she "was finally able to secure labor and materials to repair the floor, it was discovered that the bathroom [underflooring] needed to be replaced" at which time she "secured additional labor and materials as quickly as she could."  Ndoro did not make this argument in the Housing Court; thus the issue is waived.  See Boss v. Leverett, 484 Mass. 553, 563 (2020) ("issues not raised below cannot be argued for the first time on appeal").
      Even had Ndoro properly preserved this issue, her brief testimony did not provide a sufficient basis to justify her delay in repairing the floor.  Specifically, Ndoro's testimony that the COVID-19 pandemic made it generally more difficult to retain contractors "between 2020 and early 2021" did not address her delay in hiring a contractor to repair the condition of the bathroom floor of which she was first notified by Torres in July 2021.  We note that there was no evidence that Ndoro contacted the Lowell board of health to either request an extension based on contractor unavailability or to appeal from any of the above-referenced notices of code violations.[13]
      We further note that Ndoro repaired the bathroom floor only after she received notice on or about April 1, 2022, that rental subsidy payments would end on March 31, 2022, due to the premises being in noncompliance with both Federal and State housing standards and requirements.[14]
      Considering these circumstances, we agree with Torres that the judge erred in concluding that Torres failed to prove a violation of G. L. c. 93A, based on either the regulatory violations, see 940 Code Mass. § 3.17(1)(b)(1)-(2), and 3.17(1)(i), or the substantial and material breach of the common law implied warranty of habitability.  See Cruz Mgt. Co., 417 Mass. at 790; South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 470.  The case must therefore be remanded to determine the amount of damages to which Torres is entitled.  Because a tenant prevailing on a c. 93A claim may be awarded multiple damages pursuant to c. 93A, § 9 (3), the judge may award double or treble damages if the judge determines that the conduct at issue was a "willful or knowing violation . . . or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated [c. 93A]."
      2.  Attorney's fees and costs.  Torres's counterclaims arise under a fee-shifting statute, G. L. c. 93A, § 9 (4).  As the judge's findings support a clear violation of that statute, it was error to deny Torres's request for attorney's fees and costs for successfully litigating this portion of her case.
      We also allow Torres's request for appellate attorney's fees and costs.  See Yorke Mgt. v. Castro, 406 Mass. 17, 19 (1989) (General Laws c. 93A, § 9 [4], establishes right to reasonable appellate attorney's fees and costs).  Accordingly, pursuant to the procedure set forth in Fabre v. Walton, 441 Mass. 9, 10-11 (2004), Torres may file an application for appellate attorney's fees and costs, with supporting documentation, to this court within fourteen days of the issuance of this opinion, after which Ndoro shall have fourteen days within which to respond.
      Conclusion.  As we have concluded that Torres was entitled to judgment on her c. 93A counterclaims, we reverse so much of the judgment finding that Ndoro did not violate c. 93A and the order denying Torres's motion for reconsideration.  The case is remanded to the Housing Court where judgment shall be entered for Torres on her c. 93A counterclaims.  The judge shall, as discussed above, determine on remand if an award of multiple damages in accordance with c. 93A, § 9 (3), is warranted.[15]  See Grand Pac. Fin. Corp. v. Brauer, 57 Mass. App. Ct. 407, 422 (2003).  The judge should also determine reasonable attorney's fees and costs incurred in successfully prosecuting the c. 93A claims in the trial court.  The judgment is otherwise affirmed.
                                          
So ordered.
footnotes

          [1] Torres also demanded possession, damages, and attorney's fees.
          [2] The trial judge found that the facts of the case did not rise to the level of a G. L. c. 93A violation.  As for the remaining counterclaims, Torres expressly waived her breach of quiet covenant counterclaim at the trial, and did not reference, let alone argue, the claim in her motion for reconsideration.  As such, Torres cannot now claim error in the judge's failure to rule on a counterclaim she had expressly disavowed.  See Flood v. Southland Corp., 416 Mass. 62, 64 n.2 (1993).  Torres does not contest as error the adverse finding on her retaliation claim on appeal, and thus, that counterclaim is also not before us.  See King v. Driscoll, 418 Mass. 576, 585 n.8 (1994), S.C., 424 Mass. 1 (1996) (substantive claims not addressed in brief are waived).  Finally, although Torres appealed from the order denying her motion to reconsider the judgment on the c. 93A claim, she did not raise any separate argument in her briefs about the order.  Any issues relating to the ruling are thus waived.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).
               [3] Ndoro's challenge to the breach of warranty finding is not properly before us in light of her failure to file a cross appeal.  See Fortin v. Ox-Bow Marina, Inc., 408 Mass. 310, 323 (1990) (failure to take cross appeal precludes party "from obtaining a more favorable judgment than the one [she was] granted below").
               [4] Ndoro executed a housing assistance payment (HAP) contract with Community Teamwork, Inc. (CTI), a nonprofit organization that administers Torres's section 8 subsidy.  As a condition of receiving housing assistance payments from CTI, Ndoro agreed to maintain the premises in compliance with the housing quality standards of the United States Department of Housing and Urban Development (HUD) and the inspection requirements of the Massachusetts Department of Housing and Community Development (DHCD).  For an overview of the section 8 housing choice voucher program, see Wojcik v. Lynn Hous. Auth., 66 Mass. App. Ct. 103, 103 n.2 (2006).
           [5] This notification cited Ndoro for the following code violations:  "broken bathroom tiles[,] water damaged walls around shower"; "loose railings on exterior ramp"; "kitchen outlet not working"; "leak underneath kitchen sink"; "damaged cabinet floor under sink"; "shower needs to keep water contained[,] leaking shower head"; "bathroom outlet not working"; "bedrooms missing door knobs[,] keyed locks on bedrooms"; and "broken kitchen window."
      [6] The Attorney General's consumer protection regulations governing all aspects of the landlord-tenant relationship, including the conditions and maintenance of a dwelling unit, are codified at 940 Code Mass. Regs. § 3.17 (1993).  Title 940 Code Mass. Regs. § 3.17(1)(b) incorporates the notice provisions of G. L. c. 111, § 127L, which require the owner to "begin all necessary repairs or to contract in writing with a third party for such repairs within five days after such notice, and to substantially complete all necessary repairs within fourteen days after such notice" where there are "violations of the standards of fitness for human habitation as established in the [S]tate sanitary code."
          [7] In performing the inspection, CTI used the detailed form issued by DHCD. 
      [8] The January 2022 notice also detailed that the kitchen failed inspection due to the condition of the floor, broken cabinetry, damaged countertop, and windowpanes that were "dangerously loose" and "cracked."
          [9] Although the judge identified "other conditions" as "more substantial," he detailed only the condition of the "rotting bathroom underfloor" as the basis for his finding of a breach of warranty of habitability.
           [10] Although the judge found that Torres proved that the violation of the warranty of habitability lasted from July 2021 through March 2022, the undisputed evidence shows that the floor was not fully repaired by March 2022:  Ndoro testified that the floor was not repaired until early May 2022; Torres testified the repairs occurred in April or May 2022; the Lowell board of health's inspection notice, dated March 29, 2022, stated the bathroom floor was still damaged at that time and had to be replaced within ten days; there was no evidence that repairs were made on the last two days of March 2022.
          [11] The judge found that Ndoro owed Torres $130 per month for nine months (July 2021 through March 2022) for violating the warranty of habitability.  The amount of damages awarded for the warranty violation is not challenged on appeal.
      [12] Concerning the application of G. L. c. 111, § 127L to her circumstances, Ndoro does not contest either proper service, or whether the Lowell board of health or CTI was qualified to serve notice of premise violations under G. L. c. 111, § 127L.  Instead, she limits her appeal to her claim that the written violations were insufficient to place her on notice that the condition of the floor "endanger[ed] or materially impair[ed] the health, safety or well-being of a tenant of residential premises."  G. L. c. 111, § 127L.
      [13] Ndoro does not argue on appeal that Torres contributed to the delay in replacing the bathroom flooring.
          [14] The subsidy payments amounted to $1,341.00 per month.  Torres's portion of the monthly rent was $1,009.00.
          [15] Any additional damages awarded to Torres on remand may not be duplicative.  See South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 470.  See also Abdeljaber v. Gaddoura, 60 Mass. App. Ct. 294, 300-301 & n.14 (2004), and cases cited (whether damages are duplicative depends in part on whether the same act caused the same injury under more than one theory).