H. FRANK JABLONSKI & another[1] *vs.* THOMAS CLEMONS
& another.[2]

No. 02-P-1048.

Norfolk. December 4, 2003. - February 19, 2004.

Present: GELINAS, BROWN, & COHEN, JJ.

*Landlord and Tenant,* Habitability, Quiet enjoyment, Eviction, Reprisal against
tenant, Attorney's fees. *Consumer Protection Act,* Landlord and tenant.

The conduct of a certain landlord who knowingly rented a residential apart-
ment in a defective condition and failed to correct a ventilation problem —
a serious code violation — for nine years, resulting in an overheated fan
and a fire in the apartment, required a finding of serious interference with
the tenancy and substantial impairment of the character and value of the
leased premises (a breach of the implied covenant of quiet enjoyment);
moreover, the property manager's unsuccessful attempts to correct the
problem were no defense to the tenants' claim for breach of the covenant
of quiet enjoyment. [476]

In a summary process action, residential tenants were entitled, as matter of
law, to prevail on their counterclaim for retaliatory eviction, where the
landlord's termination of the tenancy only a few months after the tenants
had filed a complaint regarding code violations and withheld rent raised a
rebuttable presumption of reprisal, and where the landlord failed to meet
its heavy evidentiary burden of rebutting the presumption. [476-478]

Subsidiary findings of the judge in a summary process action required a find-
ing in favor of the tenants on their G. L. c. 93A claim against the landlord.
[478]

SUMMARY PROCESS. Complaint filed in the Quincy Division of
the District Court Department on February 26, 2001.

The case was heard by *Mark S. Coven,* J.

*A. Joseph Ross* for the defendants.

*Victoria Hayward Schepps* for the plaintiffs.

BROWN, J. This is a summary process action governed by the
one-trial system. Following a bench trial in a District Court, the

---

[1]Barbara F. Jablonski. The plaintiffs do business as York Properties.
[2]Theresa Clemons.

judge found in favor of the defendants, Thomas and Theresa Clemons (tenants), on their counterclaim for breach of the implied warranty of habitability, awarding the tenants the difference between the value of the premises as warranted and the value of the premises in defective condition. The judge, however, ruled in favor of the plaintiffs (landlord) on the tenants' counterclaims for breach of quiet enjoyment, retaliatory eviction, and violations of G. L. c. 93A.[3]

The Appellate Division of the District Court subsequently affirmed the decision and dismissed the tenants' appeal. Finding prejudicial error in the trial judge's rulings, we reverse the order of the Appellate Division and remand the case to the District Court for further proceedings.

We summarize the trial judge's findings of fact that lead us to this inexorable conclusion. In 1991, the tenants moved into unit 7K in the Eisenhower 7 building of the Presidential Acres, a large apartment complex in Randolph owned by the landlord. The tenants' unit was on the third floor. The judge found that immediately upon taking occupancy, the tenants discovered a ventilation problem in their unit. Apparently, dryers from other units were venting through their bathroom, causing both moisture and foul odor problems. The judge found that the landlord knew about the ventilation problem from the inception of the tenancy.

The tenants reported the ventilation problem to the on-site property manager. While a solution to the problem was sought, the tenants kept the ceiling fan running in the bathroom twenty-four hours per day, seven days per week. They also kept the door to the bathroom closed. Despite several good faith attempts to correct it, the ventilation problem persisted up through the time of trial nine years later.

On the night of November 22, 2000, while the tenants were

---

[3]In his findings of fact, rulings of law, and order for judgment, the judge gave the tenants, consistent with G. L. c. 239, § 8A, seven days to pay the balance due the landlord in withheld rent after offsetting the total of their breach of warranty damages. It is undisputed that the tenants did not pay the amount due in the time given in the order. Judgment should have entered on the docket, pursuant to the judge's order, at the expiration of the seven-day grace period. Although this ministerial act was never taken, all parties have treated the judge's order as the equivalent of a final judgment.

inside the apartment, a fire broke out in the bathroom, causing significant damage to the unit. The judge found that the fire was caused by the overheated fan.

On November 25, 2000, the local board of health (board), which had been called in by the tenants, inspected the premises and cited the owners for several violations of 105 Code Mass. Regs. §§ 410.000 et seq. (1997), the minimum standards of fitness for human habitation (the State Sanitary Code, Chapter II) (code), including the improper ventilation and an ant infestation that had been ongoing for "well over a year."[4]

Implied in every residential lease is a warranty that the leased premises are fit for human occupation and will remain so for the duration of the tenancy (i.e., there are no latent or patent defects in the facilities vital to the use of the premises). See *Boston Hous. Authy. v. Hemingway*, 363 Mass. 184, 199 (1973). A violation of the code may (or may not) support a claim of breach of the implied warranty of habitability. See *McAllister* v. *Boston Hous. Authy.*, 429 Mass. 300, 305 (1999). The judge has wide discretion in determining whether the conditions in any given rental unit amount to a material breach of the implied warranty of habitability. See *Boston Hous. Authy. v. Hemingway*, 363 Mass. at 200-201 & n.16.

Presented with evidence of several substandard conditions and code violations here, the judge found two material breaches of warranty arising from the longstanding ant infestation and the ventilation problem. Implicit in this conclusion was a determination that these defects were significant. See *McAllister* v. *Boston Hous. Authy.*, 429 Mass. at 305 (warranty of habitability applies to "significant defects" in the premises). Indeed, by law, insect infestation and ventilation problems are considered serious code violations and are always deemed

---

[4]The board inspected several units in the Eisenhower building on the same date, finding ant infestations in each unit in violation of 105 Code Mass. Regs. § 410.550(B) (1997). In the past, the property manager had brought in an exterminator on one or two occasions. Thereafter, when the ant problem persisted, the maintenance staff handed out cans of Black Flagg insecticide, directing the tenants to take care of the problem themselves. Advising the property manager that this was unacceptable, the board ordered the property manager to present a detailed pest management plan developed by a licensed exterminator within seven days of the compliance order.

"conditions which may endanger or impair the health, or safety and well-being" of the occupants. See 105 Code Mass. Regs. §§ 410.351 (1997), 410.352 (1997), 410.550 (1997), 410.700 (1994), 410.750 (1994), 410.750(L) (1994), 410.750(O)(5) (1994); *Altschuler* v. *Boston Rent Bd.*, 12 Mass. App. Ct. 452, 457-458 & n.9 (1981), *S.C.*, 386 Mass. 1009 (1982). The landlord did not appeal from these adverse findings.

The implied covenant of quiet enjoyment guarantees tenants the right to be free from "serious" interferences with their tenancies. See G. L. c. 186, § 14; *Simon* v. *Solomon*, 385 Mass. 91, 102 (1982); *Ianello* v. *Court Mgmt. Corp.*, 400 Mass. 321, 323-324 (1987). A landlord violates G. L. c. 186, § 14, when its "acts or omissions impair the value of the leased premises." *Cruz Mgmt. Co.* v. *Thomas*, 417 Mass. 782, 789 (1994).

Here, the judge found that the landlord knowingly rented the premises in a defective condition and failed to correct the ventilation problem — a serious code violation — for over nine years. Because of the defective ventilation, the tenants were forced to keep the bathroom door shut and to run the fan continuously, a dangerous situation which led to a fire in the apartment. The moisture and foul odor problems originating in other units, the judge found, were never eliminated and persisted to the time of trial. On these facts found by the judge, we think that the judge was required to find a serious interference with the tenancy and substantial impairment of the character and value of the leased premises. While it is true that the property manager made several attempts, albeit ineffectual, to correct the problem, there is no good faith defense to a counterclaim for breach of the covenant of quiet enjoyment. See *Cruz Mgmt. Co.* v. *Thomas*, 417 Mass. at 788-790; *Lowery* v. *Robinson*, 13 Mass. App. Ct. 982 (1982).

We also conclude on review of the evidence that the tenants were entitled, as matter of law, to prevail on their counterclaim for retaliatory eviction. See G. L. c. 186, § 18; G. L. c. 239, § 2A. At trial, the tenants presented evidence that they had engaged in several protected activities in November, 2000 (organizing a tenants' petition for submission to the landlord and to the board, filing a complaint regarding code violations

with the board, and withholding rent under G. L. c. 239, § 8A). Proof that the landlord terminated their tenancy only a few months later in February, 2001, raised a rebuttable presumption of reprisal. Once the statutory presumption attached, it could be rebutted only by clear and convincing evidence that the landlord had "sufficient independent justification for taking such action, and would have in fact taken such action, in the same manner and at the same time the action was taken, regardless of tenants engaging in . . . [protected] activities." G. L. c. 186, § 18, as amended by St. 1978, c. 149, § 1.

Here, the trial judge ruled, without any explanation, that the landlord had "rebutted any claim of a retaliatory eviction." Having reviewed the entire trial transcript and all the exhibits, we discern no clear and convincing evidence that would support this conclusion. According to the Appellate Division, the landlord testified that vacancy was necessary in order to fix the ventilation problem in the tenants' unit. This testimony may well have been sufficient to rebut the presumption. See *Brown v. Sewell*, 14 Mass. App. Ct. 970 (1982). The problem is that there was no such testimony in the record presented for review.[5] Nor was any inference warranted, contrary to the Appellate Division's conclusion, that there was "serious doubt as to the structural integrity of the building which could be remedied only if the tenants vacated the unit."[6] In fact, as far as we can determine, the landlord failed to introduce any evidence on the issue of its motive for initiating the eviction action so quickly after the tenants engaged in their protected activity.[7] It was not up to the tenants to introduce such evidence, as the landlord intimates in its brief. Because the landlord failed to meet its

---

[5]The landlord's main defense to the tenants' warranty and quiet enjoyment counterclaims was that there were no problems with the tenants' unit. The landlord further claimed that the ventilation problem either did not exist or, if it did, it was de minimis or caused by the tenants' improper actions.

[6]During pretrial discussions with the judge, the attorneys, who were asked by the judge to narrow the trialworthy issues, agreed that the building was structurally sound.

[7]To the extent that the landlord claims in this court that the close timing of events was a mere "coincidence," this argument was not raised below.

heavy evidentiary burden of rebutting the statutory presumption, the tenants should have prevailed on this claim.[8]

The judge's subsidiary findings also required a finding in favor of the tenants on their G. L. c. 93A claim. See 940 Code Mass. Regs. § 3.17(1) (1993) (conditions and maintenance of a dwelling unit). See also *Cruz Mgmt. Co.* v. *Thomas*, 417 Mass. at 790; *Dorgan* v. *Loukas*, 19 Mass. App. Ct. 959, 960 (1985).

The order of the Appellate Division dismissing the appeal is reversed. The trial judge erred in denying certain of the tenants' requests for rulings of law. Judgment shall enter for the tenants on their counterclaims of breach of the implied covenant of quiet enjoyment, retaliatory eviction, and violation of G. L. c. 93A. Further, as the Appellate Division correctly noted, the trial judge's order contains a mathematical error that needs to be corrected on remand. The amount owed to the landlord in unpaid rent, after offset, is $2,580, not $2,940. The judge's order (see note 3, *supra*) is otherwise affirmed, and judgment, as described herein, shall enter accordingly. The case is remanded to the District Court for further proceedings on the issues of damages[9] and attorney's fees consistent with the principles discussed in *Cruz Mgmt. Co.* v. *Thomas*, 417 Mass. at 788-791 & n.8.

The tenants have requested an award of attorney's fees on appeal in accordance with *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 20 (1989). The tenants "may . . . submit [to this court their] petition for [appellate] fees together with the necessary back-up material and details as to hours spent, the precise nature of the work, and fees requested," *ibid.*, within fifteen days of the issuance of the rescript in this case. The landlord will be given fifteen days to respond. With respect to fees arising from the

---

[8]It is true, as the Appellate Division noted, that the trial judge made an on-the-record commendation about "good faith" in this case. The compliment was directed to the landlord's attorney for actions she took toward improving conditions in the unit at the judge's direct request after this litigation was commenced. This evidence of good faith, without more, was insufficient to show that the landlord had an independent justification for initiating eviction proceedings in February, 2001.

[9]We note that any additional damages awarded must not be duplicative. See, e.g., *Abdeljabar* v. *Gaddoura*, 60 Mass. App. Ct. 294, 300-301 (2004), and cases cited therein.

tenants' appeal to the Appellate Division, we leave that matter for determination, if warranted, by the District Court.

*So ordered.*