NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-151

KATRINA PIMENTAL & another[1]

vs.

CHRISTINA GALARZA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from a judgment of the Housing Court that awarded the plaintiffs possession of their rental unit, as well as damages due to the defendant's failure to pay rent. The defendant primarily contends that the judge erred in ruling against her defense under G. L. c. 239, § 8A, and in concluding that the plaintiffs had not breached the warranty of habitability or covenant of quiet enjoyment. The defendant also claims that the plaintiffs engaged in a retaliatory eviction. We affirm.

Background.[2] Beginning in January of 2019, the defendant rented a first-floor apartment in the plaintiffs' Fall River

_____

[1] Christopher Barroso.
[2] We summarize the facts found by the judge, supplemented as needed by the trial evidence, reserving some details for later discussion.

home.[3]  The plaintiffs reside on the second floor of the home and have since approximately 2015.  The terms of the defendant's tenancy required her to pay $960 in rent on the first day of each month.

The defendant failed to pay rent for December of 2019 and January of 2020.  Throughout January and into early February of 2020, the plaintiffs inquired frequently, by text message, as to when they could expect payment.  During that time, the defendant invariably responded that payment would be forthcoming, and she raised no concerns about the condition of the apartment.

The situation came to a head in February.  On February 5, 2020, the defendant first expressed concerns about high electricity bills, attributing the cost to the use of electric heaters when her heat was being converted from oil to gas in December of 2019.  That same day, the plaintiffs told the defendant that she would have to leave the apartment if her arrears continued.  On February 13, 2020, after continued conversations about the defendant's nonpayment, the plaintiffs told the defendant that she would need to move out.  At that point, the defendant was three months in arrears.  In a response that same day, the defendant raised new concerns about rodents

_____

[3] The defendant had rented the apartment for some time prior, but the plaintiffs did not purchase the property until January of 2019.

2

and defective electrical outlets and indicated, for the first time, that she had been withholding her rent due to the conditions of the apartment.[4]  The plaintiffs reiterated their request that the defendant vacate the apartment.

The defendant did not leave, prompting the plaintiffs to serve the defendant with a fourteen-day notice to quit on March 3, 2020, due to her continued arrears.  The plaintiffs then initiated this summary process action on March 20, 2020.  The defendant answered, asserting, as relevant here, a defense that she properly withheld rent as contemplated by G. L. c. 239, § 8A, and counterclaims for (1) breach of the warranty of habitability, (2) breach of quiet enjoyment, and (3) retaliatory eviction.  Trial was held on December 22, 2020, at which the defendant represented herself.

The trial judge issued his findings, ruling, and order for entry of judgment on January 7, 2021, awarding the plaintiffs possession of the apartment and damages.  He also entered judgment in favor of the plaintiffs on the defendant's counterclaims.  The defendant timely appealed.

---

[4] Also on February 13, the defendant indicated for the first time that she had requested that the city of Fall River inspect her unit.  The inspection took place on February 25, 2020, and revealed minor issues with electrical outlets and a cracked bathtub that needed to be remedied for the apartment to comply with the State Sanitary Code.  The plaintiffs promptly addressed those issues.

Discussion. The defendant argues that the judge erred in rejecting her G. L. c. 239, § 8A defense, and in ruling against her on her counterclaims, primarily contending that the judge's conclusions were not supported by the evidence. In reviewing the trial judge's decision, "'we accept [the judge's] findings of fact as true unless they are clearly erroneous,' but 'we scrutinize without deference the legal standard which the judge applied to the facts.'" Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 123 (2018), quoting Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005).

The defendant first argues that the judge was wrong to reject her G. L. c. 239, § 8A defense. In particular, the defendant challenges the judge's finding that she did not provide sufficient notice to the plaintiffs that she was withholding rent due to the condition of her apartment. We perceive no error. Although § 8A provides tenants with a defense in summary process actions where they have withheld rent because of "the condition of the premises," see G. L. c. 239, § 8A, that defense is available only if the tenant "compl[ies] with [the statute's] procedural requirements." See Jablonski v. Casey, 64 Mass. App. Ct. 744, 749-750 (2005). One such requirement is that the landlord "knew of [the poor] conditions before the tenant . . . was in arrears in h[er] rent." See G. L. c. 239, § 8A. In other words, "[t]he landlord . . . must

4

be notified of any such condition before the tenant is allowed to withhold."  Jablonski, supra at 749.

Here, the judge found that the defendant did not notify the plaintiffs of the alleged poor conditions prior to missing her rental payments.  That finding was not clearly erroneous; indeed, it is amply supported by the evidence.  See Jablonski, 64 Mass. App. Ct. at 749.  The primary condition that the defendant argues justified her nonpayment was a purported issue with her heat that arose in December of 2019, when the heat in the defendant's unit was being converted from oil to gas.  Notably, it is undisputed that this condition did not arise until December 13, 2019 -- after the defendant should have paid December's rent.[5]  More importantly, however, there was no evidence that the defendant informed the plaintiffs that she was withholding rent due to any condition, heat related or otherwise, prior to missing her December and January rent payments.[6]  To the contrary, the defendant repeatedly represented

---

[5] The issue was first identified when the defendant was refused a heating oil delivery due to the state of her oil tank.  The plaintiffs promptly addressed the issue, completing the conversion on December 28, 2019.  That condition thus no longer existed as of the date January's rent was due.

[6] The defendant argues that "she verbally notified the plaintiffs of her intent to withhold in order to obtain assistance with her electric bill" -- which she claims was excessive due to the use of portable heaters during the heat conversion -- "and minor repairs associated" with violations of the State Sanitary Code. The defendant made similar statements during her cross-examination of the testifying plaintiff and in her closing

5

in text messages throughout January and into February of 2020 that payment would be forthcoming, once she received monies that she was owed from others.  See Jablonski, supra at 749.

The defendant next argues that the judge's ruling dismissing her warranty of habitability and quiet enjoyment counterclaims was contrary to the evidence.  The warranty of habitability requires "that at the inception of the rental there are no latent (or patent) defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable" (citation and quotation omitted).  Boston Hous. Auth. v. Hemingway, 363 Mass. 184, 199 (1973) (Hemingway).  It "applies only to 'substantial' violations or 'significant defects'" (citation omitted).  Goreham v. Martins, 485 Mass. 54, 65 (2020).  Similar to the warranty of habitability, "[t]he covenant of quiet enjoyment protects a tenant's right to freedom from serious interference with h[er] tenancy -- acts or omissions that impair the character and value of the leased premises."  Doe v. New Bedford

remarks (which the judge appeared to treat as testimony). However, the judge "did not find the testimony . . . to be credible."  Of course, "the credibility of the witnesses rests within the purview of the trial judge."  Weiler v. PortfolioScope, Inc., 469 Mass. 75, 81 (2014).

6

Hous. Auth., 417 Mass. 273, 285 (1994).  See G. L. c. 186, § 14.

The defendant primarily argues that, because of the December 2019 heating conversion, her apartment was so inadequately heated as to constitute a violation of the warranty of habitability and the covenant of quiet enjoyment.  The judge found, however, that the plaintiffs provided the defendant with temporary heating units during the conversion that "adequately addressed any temporary heating deficiency" such that "there was no material impact on the habitability of the premises."  That finding was not clearly erroneous.  See Jablonski, 64 Mass. App. Ct. at 747.  Although the defendant testified below (and argues here) that the heating units the plaintiffs provided were insufficient, the judge was not required to accept that testimony.[7]  See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 81 (2014).  And his conclusion to the contrary is well supported, not only by the plaintiffs' testimony but also by the evidence that the defendant did not contemporaneously complain to the plaintiffs that the units were ineffective.  See Hemingway, 363

_____

[7] The defendant has moved to expand the record to submit additional evidence on this and other issues.  Because our review is limited to the record before the trial judge, that motion is denied.  See Commonwealth v. Abdul-Alim, 91 Mass. App. Ct. 165, 171 n.6 (2017).

7

Mass. at 200-201 (whether landlord received notice is a relevant factor).[8]

Finally, we see no error in the entry of judgment for the plaintiffs on the defendant's retaliatory eviction claim under G. L. c. 239, § 2A. That statute creates a presumption of retaliation where a summary process action is initiated within six months of the tenant seeking to enforce governmentally prescribed housing standards. G. L. c. 239, § 2A. This presumption, however, is rebuttable

> "by clear and convincing evidence . . . that the plaintiff had sufficient independent justification for taking such action, and would have in fact taken such action, in the same manner and at the same time the action was taken, even if the tenant had not . . . made such report . . . ."

Id. Accordingly, to rebut the presumption landlords must show that they (1) had an independent justification to initiate summary process proceedings and (2) would have done so "in the same manner and at the same time" even if the tenant had not

---

[8] The same holds true of the other alleged defects and conditions that the defendant contends required a ruling in her favor. Those include a series of purported defects that allegedly existed at various times in 2019 and 2020 -- concerning rodents, electrical outlets, a door, radiators, bathroom flooding, and problems with hot water. Upon review of the record before us, there is no indication that the alleged defects were so substantial as to affect the apartment's livability or that they seriously interfered with the defendant's tenancy. Tellingly, none of the defects were referenced in the text message exchanges about the rent in December and January. Moreover, it appears that each alleged defect was promptly remedied, as the trial judge found.

8

reported the noncompliant conditions.  See <u>South Boston Elderly Residences, Inc</u>. v. <u>Moynahan</u>, 91 Mass. App. Ct. 455, 468-469 (2017) (addressing identical language in G. L. c. 186, § 18).

Here, the presumption applies because the plaintiffs initiated this action within one month of the defendant's complaint to the city of Fall River.  Although the judge made no explicit findings about whether the plaintiffs rebutted that presumption, the plaintiffs argued before him that they had, citing the evidence of nonpayment of rent, and their repeated requests for payment and then, for the defendant to vacate.  In entering judgment for the plaintiffs, the judge implicitly found that they had rebutted the presumption.  See <u>Commonwealth</u> v. <u>Holmes</u>, 46 Mass. App. Ct. 550, 559 (1999) ("unnecessary to remand for an explicit ruling for what was undoubtedly implicit").  And this implicit finding was supported by the evidence.  See <u>Biliouris</u> v. <u>Biliouris</u>, 67 Mass. App. Ct. 149, 164 (2006) ("implicit finding" not "clearly erroneous").  There was testimony that the plaintiffs initiated this action solely because of the defendant's nonpayment, a sufficient independent justification.  See <u>Youghal, LLC</u> v. <u>Entwistle</u>, 484 Mass. 1019, 1024 (2020).  There was also testimony and text messages indicating that the plaintiffs asked the defendant to vacate <u>before</u> the defendant's inspection request, supporting that the plaintiffs would have initiated this action when they did even

9

in its absence.  We accordingly see no clear error in the judge's ruling.[9]

Judgment affirmed.

By the Court (Wolohojian,
  Englander &
  D'Angelo, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered:  February 28, 2023.

---

[9] Because the defendant did not prevail on appeal, we deny her request for attorney's fees and costs.  The defendant has also filed a document titled "appellant's request for criminal charges of perjury," asking that we "find the [plaintiffs] guilty of perjury."  Treating the request as a motion to this court (and without meaning to suggest that such a request is within our purview), the motion is denied.

[10] The panelists are listed in order of seniority.