NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-204

ANTONIO F. PENNETTI

vs.

ELIJAH T. BEAUREGARD & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This case stems from a no-fault residential summary process action brought in the Housing Court.  After trial, the judge found that the tenants, Elijah Beauregard and Jennifer Cochran, owed the landlord, Antonio Pennetti, unpaid rent.  The tenants, however, had counterclaimed alleging retaliation, G. L. c. 186, § 18; breach of the warranty of habitability; and violations of G. L. c. 93A.  The judge found in favor of the tenants on those counterclaims and ultimately offset the tenants' unpaid rent against the amount of damages owed to them.  Judgment entered in favor of the tenants for possession and the balance of the

_____

[1] Jennifer Cochran.

monetary damages after the offset.  See G. L. c. 239, § 8A.  We affirm.

1.  Background.  We summarize the procedural history and relevant facts as the judge found them, supplemented with undisputed facts from the record.[2]  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  We reserve certain facts for later discussion.

In May 2019, the tenants signed a one-year written lease for an apartment in the landlord's three-family residential building on Elizabeth Street in Fitchburg.  The monthly rent was $1,100, and the tenants were responsible for paying the gas and electrical utility costs for the apartment.  When the lease expired, the tenants remained in the apartment on an at-will basis at the same rent.

The landlord's property manager showed the tenants the apartment before they moved in, and the landlord visited the property almost monthly thereafter.  Certain defects were present in the common areas of the property from the beginning of the tenants' occupancy; notably, a window, "stair threads,"[3] the porch floor, and the roof were in disrepair (together,

_____

[2] We are satisfied that none of the facts on which we rely are clearly erroneous.

[3] We understand "stair thread" in this context to be synonymous with "stair tread."

2

common area defects). Additionally, in October 2020, the entry door to the apartment was kicked in during an attempted break-in at the apartment. The landlord patched the door, but did not replace it for more than thirty days. During that time, the door was covered by a plywood board and secured with only a "slide chain" inside the apartment.

In March 2022, the property manager requested that the tenants identify any defects at the property. The tenants responded with a list that included many of the common area defects. Several months later, in May 2022, the city's board of health inspected the property at the tenants' request and cited the landlord for cross-metering of electricity and gas between the tenants' apartment and another apartment, and three other defective conditions in and around the apartment. The landlord remedied each of the defects identified in the board's report within a month of the issuance of the citation.

On November 3, 2022, Beauregard brought a small claims action against the landlord and the landlord's property manager, alleging that they violated G. L. c. 93A by cross-metering utilities. A clerk-magistrate found in favor of the landlord, and judgment entered accordingly.

On January 27, 2023, the landlord served the tenants with a notice to quit; he filed this summary process action on March 10, 2023. The tenants answered and asserted counterclaims and

3

defenses including, as relevant here, retaliation, breach of the implied warranty of habitability, interference with quiet enjoyment of the property, and violations of G. L. c. 93A. The tenants were current on their rent when they were served with the notice to quit, but they began withholding rent in February 2023.

The resulting case was tried in June 2023. After trial, the judge determined that the tenants owed $9,900 to the landlord in unpaid rent, but also that the tenants had proven their counterclaims and damages of $10,500. Offsetting the unpaid rent against the counterclaim damages, the judge determined that the landlord owed the tenants a balance of $600. In accordance with G. L. c. 239, § 8A, judgment for damages in that amount (plus interest) and possession of the property entered for the tenants.[4] This appeal followed.

2. Discussion. In reviewing the judge's decision, "'we accept [the judge's] findings of fact as true unless they are clearly erroneous,' but 'we scrutinize without deference the legal standard which the judge applied to the facts.'" Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 123 (2018), quoting Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005).

---

[4] Separate judgment entered awarding the tenants attorney's fees.

4

a.  Retaliatory eviction.  Beauregard's small claims action, as he filed it, sought damages for both unlawful cross-metering of utilities and the existence of other defective conditions.  The landlord's notice to quit was served less than three months later; at the time the notice to quit was served, the tenants did not owe rent and the notice to quit was not based on nonpayment of rent.  Cf. South Boston Elderly Residences, Inc. v. Moynahan, 91 Mass. App. Ct. 455, 469 n.14 (2017) (General Laws c. 186, § 18, created no presumption of retaliation where notice to quit was sent more than six months after tenant sought regulatory enforcement, and where "notice to quit was based on nonpayment of rent").  On these facts, nothing more was required to afford the tenants a rebuttable presumption of retaliation.[5]  See G. L. c. 186, § 18.  We are satisfied that, where the judge found that the landlord failed to rebut that presumption with clear and convincing evidence of a non-retaliatory motive for the eviction, the judge properly found in favor of the tenants on their claim for retaliatory eviction.

---

[5] The landlord's policy argument that Beauregard's small claims action "should not be considered 'protected activity'" does not rise to the level of appellate argument.  Were we to consider that argument, which we do not, see Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), it would be unavailing.

Cf. South Boston Elderly Residences, Inc., supra at 468-469 & n.14.

The landlord's arguments to the contrary are not persuasive. Nothing in the language of § 18 suggests that, where a tenant makes multiple attempts to enforce or obtain damages under a law regulating residential housing, the six-month clock begins to run with the earliest of these attempts. See G. L. c. 186, § 18. To the extent the landlord suggests that our opinion in South Boston Elderly Housing, Inc., supports this view, he is mistaken. Cf. South Boston Elderly Housing, Inc., supra at 469 n.14 (presumption of retaliation inapplicable where landlord alleged nonpayment of rent). Likewise, Youghal, LLC v. Entwistle, 484 Mass. 1019, 1022, 1024 (2020), does not aid the landlord here, as the tenants in the present case were current on their rent when they were served with their notice to quit. See id. (tenants not entitled to presumption of retaliation where they owed rent when served with landlord's notice to quit). Finally, because it is undisputed that the landlord sent the notice to quit approximately three months after Beauregard filed his statement of small claim, the fact that Beauregard did not "obtain relief" in the small claim based on the cross-metering at the apartment does not undercut the judge's determination. See G. L. c. 186, § 18 (presumption of retaliation attaches where landlord acts to terminate tenancy

6

"within six months after the tenant has commenced, proceeded with, or obtained relief" [emphasis added]); ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 603 (2000) ("In interpreting statutes we use the plain language of the statute where the language is unambiguous"); Nuclear Metals, Inc. v. Low-Level Radioactive Waste Mgmt. Bd., 421 Mass. 196, 212 (1995), quoting Eastern Mass. St. Ry. v. Massachusetts Bay Transp. Auth., 350 Mass. 340, 343 (1966) ("The word 'or' is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise").

b. Breach of warranty of habitability. The judge in this case found, inter alia, that the four common area defects, plus the landlord's failure to make timely repairs to the apartment's damaged front door, amounted to breaches of the implied warranty of habitability. Where each of these conditions amounted to a breach of the State sanitary code, see 105 Code Mass. Regs. §§ 410.260(D)(2); 270(A)(6); 500(A)(1) and (2); 530(C); 540(A); 630(A)(9), (12) (2023), we discern no abuse of the judge's "wide discretion" in that determination. Jablonski v. Clemons, 60 Mass. App. Ct. 473, 475 (2004) (Jablonski). See South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 462, quoting Simon v. Solomon, 385 Mass. 91, 96 (1982) ("The implied warranty of habitability includes the promise to maintain a rented unit, '[a]t a minimum,' in compliance with the State sanitary code").

7

c.  Applicability of G. L. c. 239, § 8A.  There was similarly no error in the judge's conclusion that the common area defects and the landlord's delayed replacement of the entry door provided the tenants with defenses and counterclaims to eviction under G. L. c. 239, § 8A.  To benefit from § 8A, a tenant must comply with the statute's procedural requirements.  Jablonski v. Casey, 64 Mass. App. Ct. 744, 749 (2005) (Casey).  As relevant to the landlord's argument on appeal, this means the tenants must have demonstrated that the landlord "knew of such conditions before the tenant[s] . . . [were] in arrears in [their] rent."  Id., quoting G. L. c. 239, § 8A.  Regarding the damage to the entry door, the tenants must also have demonstrated that "the [landlord] [did] not show that such condition[] w[as] caused by the tenant[s] or occupant[s] or any other person acting under [their] control."  G. L. c. 239, § 8A.  The tenants satisfied these burdens in this case.

As to notice, Beauregard testified that each of the common area defects had existed from the beginning of the tenancy, and that the entry door was not replaced for approximately two months after the landlord was made aware that it had been damaged.  The judge could and did credit this testimony; thus, his finding that the common area defects existed when the lease was executed entitled the tenants to a presumption that the landlord had constructive knowledge of those defects from the

8

outset of the tenancy.  See South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 463 n.6 (landlord deemed to have constructive notice of conditions present at inception of tenancy).  Furthermore, the landlord himself testified to his actual knowledge of the damage to the entry door and about his delay in having the door replaced.  Even if the judge credited the landlord's explanation for the delay, there was no error in the judge's finding that the landlord had knowledge of the insecure entry door.  See Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 197, 203-204 (1979) (applying § 8A where landlord had actual notice of defective condition, regardless of landlord's lack of "fault" in failing to timely remedy condition).

Turning to the substance of the counterclaims, we are satisfied that the evidence supported the judge's implicit finding that the tenants complied with the requirements of § 8A. Although the tenants withheld rent after being served with the notice to quit, the judge's findings establish that they did not do so until after the landlord was on notice of the defective conditions.  Likewise, the judge's determination that the damage to the entry door was caused by a person trying to break into the apartment included his implicit finding that the landlord "[failed to] show that [the damage to the door] [was] caused by the tenant[s] . . . or any other person acting under [their] control."  G. L. c. 239, § 8A.  Accordingly, the landlord's

9

argument that the tenants were foreclosed from raising a condition-based defense to possession under § 8A fails.[6]

d. Violation of covenant of quiet enjoyment. "The implied covenant of quiet enjoyment guarantees tenants the right to be free from 'serious' interferences with their tenancies. . . . A landlord violates G. L. c. 186, § 14, when its 'acts or omissions impair the value of the leased premises.'" Jablonski, 60 Mass. App. Ct. at 476, quoting Cruz Mgmt. Co. v. Thomas, 417 Mass. 782, 789 (1994). The judge in this case found that the common area defects amounted to violations of the covenant of quiet enjoyment, but declined to award damages on that counterclaim, recognizing that those damages duplicated the damages he previously awarded the tenants for the landlord's breach of the implied warranty of habitability. As a result, nothing about the judge's findings or rulings as to this aspect of the tenants' case affected the judgment. Considering the judge's finding on the issue as an alternative holding, however, we affirm it. Cf. Commonwealth v. Soto, 104 Mass. App. Ct. 806,

_____

[6] Additionally, the tenants had a second basis on which to raise defenses and counterclaims under § 8A, as we have concluded that the tenants met their burden of proving retaliatory eviction. See G. L. c. 239, § 8A; Meikle v. Nurse, 474 Mass. 207, 211 (2016). Given our conclusion, however, we need not address this alternative basis.

10

810-811 (2024) (differentiating dicta from alternative holdings, which are directly related to questions at issue).

Given Beauregard's testimony about the common area defects, and the photographs introduced into evidence depicting some of these conditions, we are satisfied that the judge did not err in his implicit findings that the common area defects "impair[ed]" the rental value of the property, and that the defects were "serious" (citations omitted). Jablonski, 60 Mass. App. Ct. at 476. Moreover, the judge's finding that the landlord had knowledge of the common area defects from the inception of the tenancy demonstrates at least the negligence required to support the judge's ultimate conclusion on the question. See Casey, 64 Mass. App. Ct. at 748. Accordingly, there was no error in the judge's conclusion that the tenants met their burden of proof on this counterclaim.

e. General Laws chapter 93A violations. A landlord's failure to cure violations of the State sanitary code at a rental property within a reasonable time after notice is an "unfair" and "deceptive" business practice under G. L. c. 93A, § 2. See 940 Code Mass. Regs. § 3.17(1)(a), (b), (i) (1993); South Boston Elderly Residences, Inc., 91 Mass. App. Ct. at 470. As we have noted, the common area defects and the condition of the damaged entry door in this case were all violations of the State sanitary code. The landlord was on notice of the common

11

area defects for approximately three years before he corrected them, and the damaged entry door remained insecure for more than a month before it was repaired.  These findings are more than sufficient to establish that the landlord's conduct was "willful and knowing," and to justify the judge's imposition of double damages on the tenants' G. L. c. 93A counterclaim.  See Montanez v. Bagg, 24 Mass. App. Ct. 954, 956 (1987) ("The 'willful or knowing' requirement of § 9 (3) [of c. 93A], goes not to actual knowledge of the terms of the statute, but rather to knowledge, or reckless disregard, of conditions in a rental unit which,

whether the defendant knows it or not, amount to violations of the law").[7]

Judgments entered December 14, 2023, and December 19, 2023, affirmed.

By the Court (Vuono, Meade & Hand, JJ.[8]),

*Paul Little*

Clerk

Entered:   January 24, 2025.

---

[7] The tenants have requested an award of appellate attorney's fees.  They are entitled to attorney's fees in connection with defending the landlord's appeal from the judgment on the c. 93A claim.  The tenants may, within fourteen days of the issuance of the decision in this case, submit a detailed and supported submission of the fees sought in connection with the c. 93A claim only, in accordance with the procedures set forth in Fabre v. Walton, 441 Mass. 9, 10-11 (2004).  The landlord will have fourteen days thereafter to file a response.  Otherwise, the request for attorney's fees is denied.

[8] The panelists are listed in order of seniority.