NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-199

RAHAB KIAMBUTHI & another[1]

vs.

GEORGE MUMO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, George Mumo (tenant), appeals from a judgment entered in the Housing Court following a bench trial that awarded damages, fees, and costs to the plaintiffs, Rahab Kiambuthi and David Ikanyi (landlords).  In a detailed written decision, the judge determined that the tenant owed $3,600 to the landlords in unpaid rent or use and occupancy fees, but also that the tenant was entitled to damages of $1,244.  The judge determined that the tenant proved his counterclaim alleging breaches of the warranty of habitability because of the presence of bedbugs for four months and absence of a stair rail for the whole tenancy, and he applied five and 0.5 percent diminutions

_____

[1] David Ikanyi.

of value to calculate the tenant's damages for these breaches. To avoid duplication, however, the damages for the missing stair rail were awarded under G. L. c. 93A instead of the warranty of habitability, and then doubled, because the judge found that persistent defect also to be a knowing violation of the statute. The judge further found that the landlords failed to maintain security deposit funds properly, in violation of the security deposit law, G. L. c. 186, § 15B, as then in effect[2]; and that the tenant did not prove the remainder of his counterclaims. Offsetting the unpaid rent against the counterclaim damages, the judge concluded that the tenant owed the landlords a balance of $2,356. Judgment for damages in that amount (plus court costs, fees, and interest) entered for the landlords, and the tenant appealed.

On appeal, the tenant contends that the judge erred in (1) admitting the lease as evidence and finding that it required the tenant to pay for electricity and gas utility charges; (2) finding that the tenant owed two months of rent; (3) determining the amount of damages on the tenant's warranty of habitability claim; (4) denying relief on the tenant's counterclaim alleging interference with quiet enjoyment; (5) concluding that the tenant did not prove retaliation; and

---

[2] The statute has since been amended. All citations to the statute are to the version as in in effect through August 2024.

2

(6) calculating the amount owed to the tenant under the security deposit law.  We affirm.

1.  Standard of review.  In reviewing the judge's decision, "'we accept [the judge's] findings of fact as true unless they are clearly erroneous,' but 'we scrutinize without deference the legal standard which the judge applied to the facts.'" Cambridge St. Realty, LLC v. Stewart, 481 Mass. 121, 123 (2018), quoting Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005).  See Kelly v. Jones, 80 Mass. App. Ct. 476, 478 (2011) (deference given to trial judge's credibility determinations).

2.  Discussion.  a.  Admission of lease.  The tenant first argues that the judge abused his discretion admitting in evidence, crediting the terms of, and applying the terms of the unsigned lease offered by the landlords as an exhibit.  We are not persuaded.

The trial judge credited the landlords' trial testimony that they provided the tenant with a standard form lease.  The tenant promised to sign and return the lease, but did not do so. The tenant subsequently took possession of the premises and began paying monthly rent.

At trial, the landlords submitted a form lease as an exhibit, which they contended was an accurate representation of the lease provided to the tenant.  The tenant objected to the lease's admission in evidence.  The judge found that the terms

3

of the lease applied on the basis of promissory estoppel, because in allowing the tenant to move into the premises, the landlords relied on the tenant's representations that he would return a signed copy of the lease, and the tenant in fact began to pay monthly rent in the amount of $1,800 per month after he moved in.  See Loranger Const. Corp. v. E.F. Hauserman Co., 6 Mass. App. Ct. 152, 154-159 (1978), S.C., 376 Mass. 757 (1978). The judge further found that the tenant acknowledged the original lease by submitting in evidence at trial a one-page lease addendum that refers to it.  The addendum is dated January 30, 2021, acknowledges a twelve-page lease (the lease is twelve pages if including the apartment condition statement and not the lead paint disclosure), notes the rent total of $1,800, and is signed by one of the landlords.  The application of equitable estoppel principles is a matter of discretion, Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 640 (2005), and the judge did not abuse his discretion in admitting the lease in evidence.  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Relatedly, the tenant argues that the judge erred in relying on the lease to find that the tenant was responsible for utilities, thus rejecting his claim of reimbursement for electricity and gas utility charges.  The tenant points to the fact that, at one point during trial, the judge apparently mistakenly stated that the lease did not charge the tenant for

4

electricity.  In fact, as the judge explained in his decision, the lease states that the tenant will pay for all utilities except water and garbage pickup, which is to be handled by the landlords.  Accordingly, the judge did not err in finding that the tenant's claims for reimbursement of electricity and gas utility charges were not supported.

b.  Awarding March 2024 rent.  The tenant argues that the judge should not have awarded the landlords the entirety of March 2024 rent, but only a prorated amount, because the tenant moved out on March 4, 2024.  In concluding that the tenant was liable for the March 2024 rent, the judge found that, even though the tenant moved out on March 4, 2024, the landlords did not know in advance that this was the date certain on which he would vacate.  The judge further found that rent was due on the first of each month and, even though the tenant occupied the unit on March 1, 2024, he did not pay the landlords rent for that month.  The judge's conclusion that the tenant was liable for the March 2024 rent was not clearly erroneous, particularly where he offset the amount by the tenant's damages.

c.  Damages for breaches of warranty of habitability.  The judge found two breaches of the implied warranty of habitability.  First, there was a breach because of active bedbugs from September 2021 until they were eradicated by exterminators in December 2021, a period for which the judge

5

reduced the value of the rental by five percent, equaling damages for the tenant of $360.  Second, there was a breach because of a missing hand rail along the stairs to the basement, for which the judge reduced the value of the rental by 0.5 percent for thirty-eight months, totaling damages of $342.  The tenant now argues that the judge's diminution in value as a result of the bedbugs should have accounted for eleven months, not four, because the bedbugs were present when he moved into the premises.  Additionally, the tenant argues that the judge's diminution of 0.5 percent because of the stair rail was insufficient.  We disagree.

The tenant did testify that he saw bedbugs when he moved into the premises.  He also testified that at that time, the bedbugs were in the two bedrooms he did not occupy, and that they were dead, "very weak," and "not active."  The tenant further testified, as credited by the trial judge, that the bedbugs became an issue when his children moved into the two bedrooms in September 2021.  The bedbugs were eradicated by an exterminator provided by the landlords in December 2021.  The judge's finding that the bedbugs were not an issue when the tenant moved in was not clearly erroneous.  Nor did the judge clearly err in finding that, given the difficulty in arranging for contractors because of COVID-19 restrictions, the landlords

6

acted reasonably soon in arranging for an exterminator after they were put on notice of the issue.

As for the diminution in value based on the missing basement stair rail, although there was testimony as to laundry machines being in the basement, the tenant did not testify as to how the missing stair rail inconvenienced him or how often he used the stairs. The issue is also not mentioned in text messages admitted in evidence by the tenant at trial. The judge appropriately found that the impact on the tenancy from the persistent defect was immaterial, and there is no evidence supporting that the judge's calculation was clearly erroneous.

d. Violation of covenant of quiet enjoyment. The tenant claims that the judge erred in denying relief on his counterclaim, that the bedbug issue and missing stair rail interfered with the tenant's quiet enjoyment. "The implied covenant of quiet enjoyment guarantees tenants the right to be free from 'serious' interferences with their tenancies. A landlord violates G. L. c. 186, § 14, when its 'acts or omissions impair the value of the leased premises'" (citations omitted). Jablonski v. Clemons, 60 Mass. App. Ct. 473, 476 (2004), quoting Cruz Mgt. Co. v. Thomas, 417 Mass. 782, 789 (1994). In this case, the judge found that the landlords addressed the bedbug issue "with sufficient promptness" and that any delay did not warrant a finding of interference with quiet

7

enjoyment. The judge also did not find an interference with quiet enjoyment because of the missing stair rail as the tenant did not describe in his testimony any adverse effect on him. Given the evidence presented at trial, we are satisfied that the judge did not err and affirm the denial of the quiet enjoyment counterclaim on these grounds.

e. _Retaliation claim_. The judge also rejected the tenant's claim that the landlords' summary process action was brought in retaliation for the tenant's reports about the conditions of the premises to the city. The tenant contends that, to overcome the statutory presumption of retaliation under G. L. c. 186, § 18, and G. L. c. 239, § 2A, the landlords had to prove by clear and convincing evidence that they would have sent the notice to quit in the same manner and at the same time.[3] Here, the landlords testified that they terminated the tenancy because the tenant failed to pay his rent, and the judge

---

[3] The tenant was not entitled to that presumption under G. L. c. 186, § 18, because the basis of the November 2021 notice to quit was nonpayment of rent. See id.; Jablonski, 64 Mass. App. Ct. at 476-477. Instead, the tenant was required to prove, by a preponderance of the evidence, that the landlords' motive for evicting him was the reporting of the violations on the premises. See Scofield v. Berman & Sons, Inc., 393 Mass. 95, 114-115 (1984). The tenant did not make such a showing. By contrast, under G. L. c. 239, § 2A, the landlords were required to prove by clear and convincing evidence that they would have sent the notice to quit because, under that statute, "a rebuttable presumption arises, whether or not the action was for nonpayment of rent." Youghal, LLC v. Entwistle, 484 Mass. 1019, 1023 (2020).

8

"credit[ed] that Plaintiffs had other reasons [than retaliation] for terminating the tenancy."  That the judge misstated those other reasons in his decision does not detract from his credibility determination, to which we accord "the utmost deference," as the judge heard the testimony of the parties (citation omitted).  Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 664 (2020).  The judge did not clearly err in finding by clear and convincing evidence that the notice to quit was not undertaken in retaliation for the tenant's complaints.

f.  Security deposit.  Lastly, the tenant argues that the judge erred in calculating the amount of $200 that the tenant was owed under the security deposit law, G. L. c. 186, § 15B. The judge found that the landlords failed to provide the tenant with information that the security deposit funds had been deposited in a separate account, in violation of G. L. c. 186, § 15B, and that the landlords failed to forward the interest on the security deposit funds to the tenant.

The tenant challenges the judge's findings that the parties agreed that the tenant would pay his security deposit in monthly $150 increments through the first year of tenancy beginning February 2021 until paid in full (a total of $1,800), but the tenant paid only $1,500 in total (missing two payments). However, the addendum to the lease agreement (submitted by the tenant) states that the tenant agreed to pay $150 per month in

9

twelve installments on top of monthly rent, totaling $1,800, which was also testified to at trial.  Further, there was trial testimony that the tenant paid $1,500 rather than the agreed-on $1,800.

The tenant also argues that the judge erred in "only calculating interest" and failing to order the return of the deposit or treble damages.  The tenant was not entitled to receive the security deposit fund, however, as it was used to offset the $1,800 rent he owed for September 2021.  See G. L. c. 186, § 15B (4) (i) (allowing landlord to withhold entirety of security deposit for unpaid rent that tenant has not validly withheld); Karaa v. Yim, 86 Mass. App. Ct. 714, 722 (2014).  Further, the judge appropriately trebled damages based on a five-percent interest rate, as warranted under G. L. c. 186, § 15B (3) (b).  Accordingly, the damages calculation was not clearly erroneous.

> Judgment entered December 17, 2024, affirmed.
>
> By the Court (Meade, Ditkoff & Toone, JJ.[4]),
>
> Clerk

Entered:  December 9, 2025.

---

[4] The panelists are listed in order of seniority.

10